UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------
JOY SHAKED AND YISROEL LIEBERMAN
in their individual capacity and on behalf of similarly
situated consumers
       Plaintiffs,

  -against-


EXPERIAN INFORMATION SOLUTIONS, INC.,
TRANS UNION, LLC
AND TOYOTA MOTOR CREDIT CORPORATION

       Defendants.

----------------------------------------------------------

# CLASS ACTION COMPLAINT

*Introduction*

1. Plaintiffs Joy Shaked and Yisroel Lieberman seek redress for the illegal practices of Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), and Toyota Motor Credit Corporation ("Toyota") in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq. (FCRA).

2. The FCRA prohibits furnishers of credit information to falsely and inaccurately report consumers' credit information to credit reporting agencies.

*Parties*

3. Plaintiff Joy Shaked is a citizen of Kings County, State of New York and Yisroel Lieberman is a citizen of Florida.

4. Plaintiffs are consumers as defined by 15 U.S.C. § 1681a et. seq.

5. Defendants are Credit Reporting Agencies ("CRA") that engage in the business of maintaining and reporting consumer credit information and Toyota is a furnisher of credit

information to the CRA's.

6. Upon information and belief, Defendant Experian's principal place of business is located in Costa Mesa, California.

7. Upon information and belief, Defendant Trans Union's principal place of business is located in Chcago, Illinois.

8. Defendant Toyota is a *"furnisher of information"* within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

9. Upon information and belief, Defendant Toyota's principal place of business is located in Alpharetta, Georgia.

### *Jurisdiction and Venue*

10. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. All conditions precedent to the bringing of this action have been performed.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Joy Shaked and Yisroel Lieberman*

13. Plaintiff is a consumer who is the victim of inaccurate reporting by all Defendant bureaus and the furnisher and has suffered particularized and concrete harm.

14. On or about May 18, 2022 Plaintiffs sent letters to Experian and Trans Union

15. The Plaintiffs stated that they were never late on their Toyota accounts as their accounts were set up for auto-pay.

16. When the Plaintiffs extended their leases, they were never informed by telephone or mail that the auto-pay arrangement would be turned off once the lease was extended.

17. If the Plaintiffs were told that the auto-pay would not work once the lease was extended, they would have made manual payments or set up auto pay again.

18. Plaintiffs requested that the late payment showing on their accounts are not accurate as the auto-pay should have continued.

19. Plaintiffs have been damaged that the accounts now appear as a negative account and hurts their ability to obtain the same level of credit as the Plaintiffs had previously.

20. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

21. Defendants violated § 1681i(c) of the FCRA, since Plaintiffs disputed the accuracy of the above-mentioned information in Plaintiffs' credit files and then notified Experian and Trans Union of the said dispute.

22. Despite the dispute from the Plaintiffs, Defendants have completely abdicated their obligations under federal and state law.[1]

23. Defendant Toyota has promised through its subscriber agreement or contracts to accurately update accounts but Toyota has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiffs' credit reports.

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing *Gorman v. Experian*; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

24. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

25. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute, and correct any inaccuracies. Id.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; *Nelson*, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge] conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under

Sections 727 and 524(a)(2) of the Bankruptcy Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that Citibank continued to misreport Plaintiff's debt history even after Plaintiff initiated his dispute with Experian. Accordingly, he has stated a valid claim under the FCRA.)

26. It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

27. However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRA breached its statutory duty to notify the furnisher.[2]

28. These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

---

[2] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

29. Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

30. As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so merely showing that the furnisher did not comply with one of its duties will not establish liability.

31. Inaccurate information was included in the Plaintiffs' credit reports.

32. The inaccuracy was due to the Defendants' failure to follow reasonable procedures to assure maximum possible accuracy.[3]

33. The Plaintiffs suffered injuries.

34. The consumers' injuries were caused by the inclusion of the inaccurate entry.

---

[3] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

35. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

36. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

37. Discovery of the violations brought forth herein began and occurred in the month of June, 2022 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

## CLASS ACTION ALLEGATIONS

38. When a consumer notifies a CRA that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file" the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). As part of the investigation, the CRA must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer…." 15 U.S.C. § 1681i(a)(2)(A).

39. If a consumer disputes an account that appears on his or her credit, the CRA must investigate to determine whether the account pertains to that consumer and should be part of that consumer's credit history. As part of the investigation, a CRA must notify the source of the disputed account about the consumer's dispute and provide the source with

all the relevant information provided by the consumer. Alternatively, the CRA can delete the derogatory information.

40. All CRAs have long been aware of its obligations to properly investigate consumer disputes. It had the benefit of plain, unambiguous statutory language requiring a reasonable investigation of "the completeness or accuracy of **any item** of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

41. The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like Experian violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." Collins v. Experian Info. Sol's, Inc., 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

42. Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); Morris v. Equifax Info. Serv's, LLC, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982); Dennis v. BEH-1, LLC, 520 F.3d 1067 (9th Cir. 2008); Steed v. Equifax Info. Serv's, LLC, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

43. The Defedants' failure to investigate disputed account information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

44. Plaintiffs bring this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Experian's and Trans Union's failure to comply with 15 U.S.C. § 1681i(a)(1) and (2).

45. This cause of action is brought on behalf of Plaintiffs and the members of a class.

46. The class consists of all persons whom Defendants' records reflect resided in the United States, who disputed an account concerning Toyota with CRAs which was not properly corrected during the period beginning two years prior to the filing of this action and through the time of judgment.

47. The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Experian and Trans Union, Experian and Trans Union have represented that they receive thousands of disputes per day. Accordingly, Plaintiffs estimate that the class has hundreds or thousands of members.

48. There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Experian and Trans Union violated the FCRA by failing to investigate and contact the source of the disputed inquiry or delete it; and whether the violations were willful.

49. Plaintiffs' claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theory: a dispute to Experian and Trans Union regarding a dispute, which Experian and Trans Union did not investigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2). Plaintiffs received results of their disputes

from Experian and Trans Union with standard form language. Plaintiffs' claims are typical of the two-year class because they made their disputes within two years.

50. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs are committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue these claims.

51. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. Experian's and Trans Union's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Experian and Trans Union, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's and Trans Union's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

52. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications

with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

## AS AND FOR A FIRST CAUSE OF ACTION

*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

**Failure to Conduct Reasonable Investigation and Maintain Reasonable Accuracy**

53. At all times mentioned in this Complaint, Experian and Trans Union were and are "consumer reporting agency[s]," as referred to in 15 U.S.C. § 1681a(e).

54. At all times mentioned in this Complaint, Toyota was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA.

55. Toyota is reporting inaccurate credit information concerning the Plaintiffs to one or more credit bureaus as defined by 15 U.S.C. § 1681a of the FCRA.

56. Prior to the commencement of this action, Plaintiffs disputed certain information about a Toyota accounts on Plaintiffs' consumer credit reports.

57. Plaintiffs were disputing that the auto pay was not renewed and that the monthly payment should have been made.

58. The CRAs subsequently notified the Plaintiffs that they would investigate the said dispute.

59. The CRAs' investigations did not resolve the dispute.

60. The disputed account appeared on Plaintiffs' CRA consumer reports and in their file maintained by the CRAs.

61. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate

customer account information. See <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

62. Defendants' investigation process did not live up to the standards of <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

63. Defendants' investigation process did not live up to the standards of the Federal Trade Commission in the matter of <u>U.S. v. Performance Capital Mgmt.</u> (Bankr. C.D. Cal. Aug. 24, 2000).

64. Defendants violated the duty under 15 U.S.C. 1681i by verifying the above referenced account without obtaining any documentation in support of their contention that Plaintiffs were responsible to make the payments even though Toyota failed to notify the Plaintiffs that they would have to reset the auto-pay for the extension of their leases.

## **LIABILITY AND DAMAGES**

65. Plaintiffs re-state, re-allege and incorporate herein by reference, the previous paragraphs as if set forth fully in this cause of action.

66. At all times mentioned in this Complaint, various employees and/or agents of Defendants were acting as agents of Defendants and therefore Defendants were liable to for the acts committed by its agents and/or employees under the doctrine of respondeat superior.

67. At all times mentioned in this Complaint, employees and/or agents of Defendants were acting jointly and in concert with Defendants, and Defendants are liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendants and their agents or employees were engaged in a common business venture and were acting jointly and in concert.

68. Plaintiffs believe and assert that they are entitled to $1,000.00 each in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq. and actual damages as well.

69. Plaintiffs believe and assert that Defendants' actions were willful and intentional.

70. Because Defendants' acts and omissions were done willfully, Plaintiff requests punitive damages.

71. Plaintiffs request punitive damages against Defendants in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

72. For purposes of a default judgment, Plaintiffs believe that the amount of such punitive damages should be no less than $9,000.00 each.

73. Plaintiffs are also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

74. Plaintiffs are entitled to any other relief that this Court deems appropriate and just under the circumstances.

WHEREFORE, Plaintiffs, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in their favor and against the Defendants and award damages as follows:

    a) Actual and statutory damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    b) Punitive damages pursuant to 15 U.S.C. § 1681n;

    c) Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    d) Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTION
*(New York Fair Credit Reporting Act)*

75. Plaintiff Shaked re-states, re-alleges, and incorporate herein by reference, the previous paragraphs as if set forth fully in this cause of action.

76. Defendants Experian and Trans Union failed to delete information found to be inaccurate,

reinserted the information without following the NY FCRA, or failed to properly investigate Plaintiff's disputes.

77. Defendants failed to promptly re-investigate and record the current status of the disputed information and failed to promptly notify the consumer of the result of their investigation, their decision on the status of the information, and his rights pursuant to this section in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(a).

78. Defendants failed to clearly note in all subsequent consumer reports that the account in question is disputed by the consumer in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(c)(3).

79. As a result of the above violations of the N.Y. FCRA, Defendants are liable to Plaintiffs for actual damages, punitive damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiffs, respectfully request preliminary and permanent injunctive relief, and that this Court enter judgment in their favor and against the Defendants and award damages as follows:

    e) Actual damages, punitive damages and attorney's fees pursuant to N.Y. Gen. Bus. Law § 380-m; and

    f) Any other relief that this Court deems appropriate and just under the circumstances.

**<u>AS AND FOR A THIRD CAUSE OF ACTION</u>**
*(Breach of Contract against Toyota)*

80. Plaintiffs re-state, re-allege and incorporate herein by reference the previous paragraphs as if set forth fully in this cause of action.

81. Plaintiffs entered into an agreement with Toyota for the lease of a vehicle.

82. Plaintiffs paid their auto lease faithfully with the use of auto-pay.

83. In or about the end of 2021 Plaintiffs entered into an agreement to extend the lease of their vehicle.

84. Plaintiffs extended the term of her vehicle with all other terms the same or substantially the same.

85. Plaintiffs were never informed that Toyota would not continue with the agreement of auto-pay.

86. Defendant breached the auto-pay agreement by cancelling same without any basis whatsoever.

87. Plaintiffs were damaged thereby that Toyota did not automatically cause the Plaintiffs to pay the monthly lease payment.

88. The Plaintiffs' Experian and Trans Union reports reflect that they were 30 days late.

89. The Plaintiffs' credit scores were lowered due to the late on their reports.

WHEREFORE, plaintiffs request damages, costs and any other relief the Court deems just and appropriate.

## AS AND FOR A THIRD CAUSE OF ACTION
### *(Negligence against Toyota)*

90. Plaintiffs re-state, re-allege and incorporate herein by reference the previous paragraphs as if set forth fully in this cause of action.

91. It appears axiomatic that if there is a lease extension, the consumer is required to sign up for auto-pay again for the term of the lease extension.

92. Defendant had a duty to inform the Plaintiff that they would have to sign up again for the auto-pay for their lease payments during the lease extension period.

93. Defendant failed to inform the Plaintiffs that they needed to sign up again for the auto-pay during the lease extension period.

94. Defendant's negligence caused the Plaintiffs damages as the Plaintiffs did not know that she needed to sign up for auto-pay again for the least extension period.

    Plaintiffs were damaged thereby that Toyota has caused their Experian and Trans Union credit reports to reflect a late payment.

    WHEREFORE, plaintiffs request damages, costs and any other relief the Court deems just and appropriate.

Dated: Woodmere, New York
July 12, 2022

　　　　/s/ Adam J. Fishbein　　　　
Adam J. Fishbein, P.C.  (AF-9508)
Attorney at Law
**Attorney for the Plaintiffs**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

　　　/s/ Adam J. Fishbein　　
Adam J. Fishbein (AF-9508)